UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 1 4 2016

Mathieu Credo Koumoin,

                    Plaintiff,

          —v—

Ban Ki-Moon,

                    Defendant.

16-cv-2111 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Mathieu Credo Koumoin, proceeding *pro se*, brings this employment

discrimination suit against United Nations ("UN") Secretary-General Ban Ki-Moon.  Koumoin

alleges that he was the victim of unlawful discrimination and retaliation relating to the non-

renewal of his contract with the UN.  For the following reasons, the Court dismisses this case for

lack of subject matter jurisdiction.

## I.     Background

### A.     Facts

Plaintiff Koumoin is a citizen of Ivory Coast and a permanent resident of the United

States.  Compl. at 7-8 (Dkt No. 1).  From 2003 through 2006, Koumoin worked for the UN.

Koumoin v. Secretary-General of the United Nations, Judgments U.N. App. Trib. No. 2011-

UNAT-119 (2011) (herein after "UNAT Judgment"); Compl. at 18-19.  Specifically, Koumoin

worked in Senegal as the Regional Coordinator for Climate Change at the United Nations

Development Program (UNDP) - Global Environmental Facility (GEF).  Compl. at 7, 18; UNAT

Judgment ¶ 6.  His job was to administer aid for micro-hydroelectricity in rural areas of Africa.

Compl. at 18.  Koumoin's appointment as Regional Coordinator was set out in yearly contracts,

1

with the first contract commencing in January 2003.  UNAT Judgment ¶ 6; Compl. 9, 20-21.

Because Koumoin received positive performance ratings, his contract was renewed in 2004 and

2005.  Compl. at 19; UNAT Judgment ¶ 6.

     Koumoin's employment situation changed in 2006.  That year, the UN entity responsible

for issuing Koumoin's performance ratings — the UNDP Career Review Group ("CRG") —

gave Koumin his first negative performance review.  Specifically, the CRG found that Koumoin

had only "partially met expectations."  UNAT Judgment ¶¶ 1, 7; Compl. at 19; Compl. Ex. 1 at 9

(Dkt 1-1); Koumoin Jurisdiction Br. Ex. 2 (Dkt No. 7-2) at 6.  On March 16, 2006, Koumoin met

with the GEF's Executive Director and Deputy Executive Coordinator.  UNAT Judgment ¶ 8;

Compl. at 19; Koumoin Jurisdiction Br. Ex. 2 at 6.  The purpose of the meeting was to discuss

Koumoin's negative performance rating and some problems Koumoin was having with his

supervisor.  UNAT Judgment ¶ 8; Koumoin Jurisdiction Br. Ex. 2 at 6.  Following this meeting,

Koumoin was informed that his contract would not be renewed and that his appointment would

expire.  UNAT Judgment ¶ 8; Compl. at 19; Compl. Ex. 1 at 12.

     According to Koumoin, both this negative performance rating and the non-renewal of his

contract were retaliatory.  Complaint at 18-19.  Koumoin alleges that his supervisor asked him to

act "unethically" by "quietly" asking him to "re-direct" certain GEF funds.  *Id.* at 18.  Koumoin

refused and attempted to report his supervisor.  *Id.*  According to Koumoin, it was this refusal

and attempted "whistleblowing" that led to his contract not being renewed.  *Id.* at 18-20.

     Over the next three years, Koumoin repeatedly made unsuccessful attempts to raise his

retaliation claim with various UN agencies.  For example, Koumoin filed a complaint with the

UNDP Harassment Focal Point, Office of Human Resources, Bureau of Management

(OHR/BOM) on March 30, 2016.  UNAT Judgment ¶ 9; Koumoin Jurisdiction Br. Ex. 2 at 6-7.

He made the same claim that he does in this lawsuit: that the negative performance review and non-renewal of his contract were decisions made in retaliation for Koumoin's failure to follow his supervisor's unethical instructions to redirect GEF funds. *Id.* In addition to filing a retaliation claim, Koumoin sought administrative review of the decision not to renew his appointment. *Id.* On May 4, 2006, the OHR/BOM rejected Koumoin's complaint. UNAT Judgment ¶ 10. The office determined that Koumoin's complaint concerned work-related issues that did not constitute harassment within the meaning of official UN policy. *Id.* In September 2006, Koumoin requested that the OHR/BOM reopen his case, but the office denied his request. *Id.* ¶ 13. On January 9, 2007, the OHR/BOM denied Koumoin's request for administrative review, finding no error in the decision not to renew his contract. *Id.* ¶ 15. Koumoin appealed this decision to the Joint Appeals Board, but he lost. *Id.* ¶¶ 15, 17.

In addition to seeking relief in the OHR/BOM, Koumoin also sought review with the CRG, the group that gave him his negative performance review. After four separate meetings, during which Koumoin was repeatedly permitted to submit documentation on his own behalf and personally present his case, the CRG confirmed Koumoin's negative performance rating. *Id.* ¶¶ 11, 13. On December 7, 2006, a Rebuttal Panel upheld this decision. *Id.* ¶ 14.

Koumoin also sought relief with the UNDP Office of Audit and Performance Review (OAPR). *Id.* ¶ 12. He submitted allegations of misconduct against his supervisor. *Id.* Approximately one month later, the OAPR rejected Koumoin's allegations, finding that there was "no evidence" to support Koumoin's claim that his supervisor had committed misconduct. *Id.*

Additionally, Koumoin filed a request for review with the United Nations Ethics Office. UNAT Judgment ¶ 16; Compl. Ex. 19 at 20 (Dkt No. 1-19). The office determined that there

was no evidence of retaliation. *Id.* It declined to undertake an independent review of Koumoin's case. *Id.*; Koumoin Jurisdiction Br. Ex. 1 (Dkt No. 7-1) at 27.

Having failed to obtain relief through these administrative channels, Koumoin then sought judicial relief within the UN. Compl. at 7-8, 10-11; Koumoin Jurisdiction Br. Ex. 1 at 10-20, 23-28; UNAT Judgment ¶¶ 18-19. The UN has a two-tiered system for the judicial review of staffing disputes. Antigoni Axenidou, *New Trends in the Administration of Justice of International Organizations*, 106 Am. Soc'y Int'l L. Proc. 358 (2013); *see also* Patrick J. Lewis, *Who Pays for the United Nations' Torts?: Immunity, Attribution, and "Appropriate Modes of Settlement*," 39 N.C. J. Int'l L. & Com. Reg. 259, 264 (2014). A staff member may first file a complaint with the United Nations Dispute Tribunal ("UNDT"). *Id.* Decisions rendered by the UNDT are reviewed by the United Nations Appeal Tribunal ("UNAT"). *Id.*

Both the UNDT and UNAT rejected Koumoin's complaint. Compl. Ex. 7 at 22; Compl. Ex. 9 at 5; Koumoin Jurisdiction Br. Ex. 2 (Dkt No. 7-2) at 5, 21-22; UNAT Judgment ¶¶ 18, 38-39. The UNAT concluded that "save for [Koumoin's] bald assertion of retaliation, [there is] no evidence to show that he was a genuine whistle-blower." UNAT Judgment ¶ 34. The Tribunal determined that Koumoin's allegations involved "a disagreement between [Koumoin] and management regarding work matters," not a bone fide case of retaliation. *Id.* It also affirmed Koumoin's negative performance rating, noting that Koumoin had five chances at review with the CRG. *Id.* ¶ 37. Overall, the UNAT concluded "that the non-renewal of [Koumoin's] contract was not retaliatory but based on his performance rating which had been reviewed and confirmed after a rebuttal opportunity was given." *Id.* ¶ 38.

### B.    Procedural History

On October 30, 2015, Plaintiff Koumoin filed a *pro se* complaint in the United States District Court for the District of Colorado. *Koumoin v. United Nations Sec'y Gen.*, No. 15-cv-02415-CBS (D. Colo.) (Dkt No. 2).  He named UN Secretary-General Ban Ki-moon as the sole defendant.  *Id.*  Koumoin brought his lawsuit under Title VII of the Civil Rights Act of 1964, and he made essentially the same allegations that he brought before the various UN administrative agencies and judicial tribunals — that the failure to renew his contract constituted unlawful discrimination and retaliation in response to Koumoin's alleged whistleblowing activities.  *Id.*

While Koumoin's lawsuit in Colorado was pending, Koumoin filed this *pro se* lawsuit in the United States District Court for the Southern District of New York. Dkt No. 1.  Filed on March 22, 2016, this lawsuit duplicated the case pending before the Colorado district court, as it also named Secretary-General Ban as the sole defendant and again asserted employment discrimination under Title VII. Dkt No. 1.  For several months, Koumoin's two federal court cases proceeded simultaneously.  On June 2, 2016, Koumoin withdrew his Colorado case in favor of his Southern District of New York case.  Colorado Dkt No. 17.

Koumoin never properly served Secretary-General Ban, either in Colorado district court or before this Court.  On the same day that he filed the complaint before this Court, Koumoin also sought a Court order instructing the United States Marshal Service to help him serve the defendant.  Dkt No. 3.  On April 5, 2016, the Court issued an order denying this request and requiring Koumoin to show cause why the case should not be dismissed for lack of subject matter jurisdiction.  Dkt No. 5.   The Court noted that persuasive authority indicated that Defendant Ban, as current Secretary-General of the UN, was immune from suit.  *Id.*  On April 22, 2016, Koumoin filed a *pro se* brief arguing that Ban was not immune from suit and that the

Court did have jurisdiction. Dkt No. 7. Koumoin subsequently filed additional motions, including another motion asking the Court to assist him with serving Ban and a "motion for preliminary injunctive relief." Dkt Nos. 9-10. Because Secretary-General Ban has yet to be properly served, he has not put in a notice of appearance in this case.

On November 29, 2016, the United States appeared in this case and submitted a "Statement of Interest." *See* 28 U.S.C. § 517; Dkt No. 12-13. In that statement, the United States asserted that "Secretary-General Ban and the UN are immune from legal process and suit absent an express waiver." Dkt No. 13 at 1. The Government attached a letter from the UN, dated June 20, 2016, in which the UN expressed that neither the UN nor Secretary-General Ban would waive their immunity in this particular case. Dkt No. 13-1. Accordingly, the Government's Statement of Interest argues that "the Court lacks subject matter jurisdiction over this matter." Dkt No. 13 at 1.

The Court now resolves the question of whether subject matter jurisdiction exists in this case.

## II.    Standard of Review

The Court must dismiss a case if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). Federal courts have an independent obligation to inquire into their subject matter jurisdiction *sua sponte*, even if the parties do not contest the issue. *D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, 756 F.3d 151, 161 (2d Cir. 2014); *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). As the party asserting subject matter jurisdiction, Plaintiff Koumoin bears the burden of proving by a preponderance of the evidence that jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When analyzing whether subject matter jurisdiction exists, the

Court may refer to evidence outside the pleadings. *Makarova*, 201 F.3d at 113; *see also Georges v. United Nations*, 84 F. Supp. 3d 246, 248 (S.D.N.Y. 2015), *aff'm* 834 F.3d 88 (2d Cir. 2016).

### III.   Secretary-General Ban Is Immune

As explained below, as the current Secretary General of the United Nations, Defendant Ban Ki-moon is immune from this lawsuit. The Court therefore dismisses Plaintiff Koumoin's complaint for lack of subject matter jurisdiction.

The Convention on Privileges and Immunities of the United Nations ("CPIUN"), a treaty signed by the United States, discusses the immunity of both the United Nations and certain UN officials. The CPIUN "extends absolute immunity to the United Nations." *Brzak v. United Nations*, 597 F.3d 107, 111 (2d Cir. 2010); *see also Georges v. United States*, 834 F.3d 88, 93 (2d Cir. 2016). Similarly, the CPIUN states that "[o]fficials of United Nations" are "immune from legal process in respect of words spoken or written and all acts performed by them in their official capacity." CPIUN art. V, § 18. Additionally, "the Secretary-General and all Assistant Secretaries-General shall be accorded . . . the privileges and immunities, exemptions and facilities accorded to diplomatic envoys, in accordance with international law." CPIUN art. V, § 19; *see also Brzak*, 597 F.3d at 113. The CPIUN is a "self-executing" treaty, meaning that "American courts must recognize the immunity it adopts in domestic litigation." *Brzak*, 597 F.3d at 111-13.

The relevant "international law" laying out the UN Secretary-General's "privileges and immunities" is the Vienna Convention on Diplomatic Relations ("VCDR"). *Id.* at 113. Under that treaty, "current diplomatic envoys enjoy absolute immunity from civil and criminal process," subject to a few narrow exceptions enumerated in Article 31. *Brzak*, 597 F.3d at 113 (citing The Vienna Convention on Diplomatic Relations, Apr. 18, 1961, *entered into force with*

*respect to the United States* Dec. 13, 1972, 23 U.S.T. 3227, art. 31 (hereinafter "VCDR")).[1] Defendant Ban is the current Secretary General of the UN, meaning that under the VDCR, he is absolutely immune from suit. *Brzak*, 597 F.3d at 113; *Georges*, 84 F. Supp. 3d at 250-51 (dismissing a lawsuit against Secretary-General Ban on immunity grounds); *Van Aggelen v. United Nations*, No. 06 Civ. 8240(LBS), 2007 WL 1121744, at *2 (S.D.N.Y. Apr. 12, 2007), *aff'm* 311 F. App'x 407 (2d Cir. 2009) (dismissing lawsuit against former Secretary-General Kofi Annan on immunity grounds); *McGehee v. Albright*, 210 F. Supp. 2d 210, 218 (S.D.N.Y. 1999) (same).  Secretary-General Ban's immunity from suit means that the Court lacks subject matter jurisdiction over this case. *See Brzak*, 597 F.3d at 109; *Georges*, 84 F. Supp. 3d at 248.[2]

Although the current Secretary-General's immunity is referred to as "absolute," *see Brzak*, 597 F.3d at 113, this immunity is not actually inviolable.  This immunity can be waived, and a limited number of exceptions to immunity exist. *Id.* at 111; *Georges*, 84 F. Supp. 3d at 250 & n.2.  In response to this Court's order to show cause why the case should not be dismissed for lack of subject matter jurisdiction, Koumoin relies on a number of these doctrines to argue that jurisdiction exists in this case.  The Court finds none of his arguments persuasive.

First, Koumoin argues that subject matter jurisdiction exists because "[t]he U.N. Secretary-General accepted the complaint which was received by the U.N. Secretariat on Friday, November 19[th] 2015."  Koumoin Jurisdiction Br. (Dkt No. 7) at 9.  There are two problems with this argument.  First, Koumoin does not appear to have properly served Secretary-General Ban.[3]

---

[1] Former UN officials enjoy a less protective immunity known as "functional immunity." *Brzak*, 597 F.3d at 113.  Rather than being absolutely immune from suit, former diplomats receive immunity only with respect to official acts. *See id.*; *see also Swarna v. Al-Awadi*, 622 F.3d 123 (2d Cir. 2010).

[2] Koumoin's complaint names Secretary-General Ban as the only defendant. Dkt No. 1.  To the extent his complaint can be construed as also naming the UN as a defendant, the lawsuit is also barred by immunity principles. *See Georges*, 834 F.3d at 93; *Brzak*, 597 F.3d at 111.

[3] Koumoin asserts that he properly served Secretary-General Ban by mailing a copy of the complaint to the UN. Dkt No. 10 at 4.  However, the Federal Rules of Civil Procedure require the complaint and summons to be delivered to an actual human being, specifically the defendant himself, the defendant's agent, or someone of

Second, even if Koumoin had complied with the laws governing the effective service of process, any service on Ban was defective because the VCDR "precludes service of process on persons entitled to diplomatic immunity." *Swarna v. Al-Awadi*, 622 F.3d 123, 141 (2d Cir. 2010); *see also* CPIUN art. II, § 2 ("The United Nations . . . shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity."); *id.* § 3 ("The premises of the United Nations shall be inviolable.").

Second, Koumoin claims that Secretary-General Ban has waived his immunity. Compl. at 6; Koumoin Jurisdiction Br. 8, 10-11. Under the VCDR, while the Secretary-General's immunity may be waived, that "[w]aiver must always be express." VCDR art. 32. In this case, far from expressly waiving his immunity, Secretary-General Ban has expressly *invoked* his immunity, as stated in the Government's "Statement of Interest" and the attachments. Dkt No. 13, 13-1. This alone means there is no waiver this case. *See Georges*, 84 F. Supp. 3d at 249.

Notwithstanding the fact that Secretary-General Ban has invoked his immunity, Koumoin argues that Ban impliedly waived his immunity by agreeing to participate in the United Nations Dispute Tribunal. Dkt No. 3 at 8; Compl. at 10. Again, the Secretary-General of the UN cannot "impliedly" waive his immunity; any waiver must be express. VCDR art. 32; *Brzak*, 597 F.3d at 111. Additionally, the Second Circuit Court of Appeals has rejected the argument that participating in the UNDT constitutes a waiver of immunity in American courts. *See Brzak*, 597 F.3d at 112. As the Second Circuit explained in *Brzak*, to hold that the participation in an

---

"suitable age and discretion" who resides at the defendant's home. *See* Fed. R. Civ. P. 4(e)(2). Simply mailing the complaint and summons is insufficient. *See id.* New York law is similar. *See* Fed. R. Civ. P. 4(e)(1) (noting that service can be effectuated by complying with federal law or the law of the state where the district court is located). New York law requires in-person service of the complaint and summons, subject to a few exceptions clearly not applicable here. *See* N.Y. C.P.L.R. § 308(1)-(3).

internal dispute resolution mechanism, such as the UNDT, constituted waiver "would read the word 'expressly' out of the CPIUN." *Id.*

This conclusion, that agreeing to participate in the UNDT or UNAT does not constitute a waiver of immunity, is confirmed by the history of the tribunals. As mentioned above, the CPIUN established absolute immunity for the UN and current Secretary-General. *Id.* at 112-13. At the same time, the CPIUN recognized that the UN needed some sort of dispute resolution mechanism. Thus, while it granted diplomatic immunity to the UN and Secretary-General, the CPIUN also stated that "[t]he United Nations shall make provisions for appropriate modes of settlement of" certain "private law" disputes and "[d]isputes involving any official of the United Nations who by reason of his official position enjoys immunity, if immunity has not been waived by the Secretary-General." CPIUN art. VII, § 29. The UNDT and UNAT, the judicial review mechanisms through which Koumoin sought review, were created in order to comply with this provision of the CPIUN. Axenidou, *supra*, at 359. As the text of the CPIUN and the history of these tribunals make clear, participation in the UNDT and UNAT was not meant to constitute a waiver of the immunity enjoyed by the UN and Secretary-General. Rather, these tribunals were meant to serve as alternative dispute resolution mechanisms specifically for those cases in which the official had *not* waived his immunity. *See* CPIUN art. VII, § 29 (requiring the UN to establish alternative dispute resolution mechanisms to resolve disputes against "any official of the United Nations who . . . enjoys immunity, *if immunity has not been waived*" (emphasis added)); Axenidou, *supra*, at 359 (noting that the UNDT and UNAT exist to adjudicate "any case in which [the United Nations] *maintains its immunity* but bears legal responsibility or liability" (emphasis added)); *see also* Tamara A. Shockley, *The Evolution of a New International System of Justice in the United Nations: The First Sessions of the United Nations Appeals*

*Tribunal*, 13 San Diego Int'l L.J. 521, 522 (2012).  In other words, the UNDT and UNAT exist precisely because the UN and Secretary-General have immunity.  It would contradict the entire purpose of these judicial review mechanisms to hold that the Secretary-General's agreement to participate in these tribunals constituted a waiver of immunity.

Third, Koumoin argues that, even if this Court does not have jurisdiction to relitigate the entirety of his case against Secretary-General Ban, this Court does have limited jurisdiction to "enforce" or "execute" the "binding decisions issued by the UN's own tribunals."  Compl. at 10. This argument is problematic for multiple reasons.  First, Koumoin cites no authority for the proposition that the Court has jurisdiction to enforce judgments from the UN's alternative dispute resolution mechanisms.  *See id.*  Second, the Court would only have authority to enforce judgments against the Secretary-General if there had been an "express" waiver of his immunity. VCDR art. 32.  As explained above, there has been no express waiver.  Finally, even if the Court did have subject matter jurisdiction to enforce judgments or orders from the UNDT and UNAT — which it does not — Koumoin fails to identify any judgment or order for the Court to enforce against Secretary-General Ban.  Koumoin appears to have *lost* before the UNDT and the UNAT; those tribunals, along with every UN agency that considered his claim, ruled in favor of the UN. UNAT Judgment ¶¶ 9-18, 39; Compl. at 7-8, 10-11; Koumoin Jurisdiction Br. Ex. 1 at 10-20, 23-28.[4]

---

[4] [4]In his response to the Statement of Interest filed by the United States, *see* Dkt No. 13, Koumoin claims that he prevailed before the UN.  The Court notes, however, that documents Koumoin himself attached to his complaint include letters from the UNDT stating that Koumoin lost his case.  *See* Compl. Ex. 7 at 22; Compl. Ex. 9 at 5; Koumoin Jurisdiction Br. Ex. 2 (Dkt No. 7-2) at 5, 21-22.  Additionally, the publically available decision from UN Appeals Tribunal also states that Koumoin lost.  UNAT Judgment ¶¶ 18, 38-39.  Ultimately, the dispute over whether Koumoin prevailed before the UN is irrelevant because regardless of whether Koumoin won or lost, subject matter jurisdiction does not exist here because Secretary-General Ban and the UN have not waived their immunity.

Finally, Plaintiff contends that his lawsuit falls within one of the exceptions to the Secretary-General's immunity. As mentioned previously, the current UN Secretary-General has absolute immunity from civil process, subject to three narrow exceptions laid out in Article 31 of the VCDR. Article 31 states:

> 1. A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:
>> (a) A real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;
>> (b) An action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State;
>> (c) An action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

VCDR art. 31. Koumoin alleges that his lawsuit falls within the third, "commercial activity," exception. Koumoin Jurisdiction Br. at 4, 11.

Many courts, however, have held that employment discrimination claims such as Koumoin's do not fall within the "commercial activity" exception. This is because the commercial activity exception only applies when the UN official's challenged actions fell "outside his official functions," *see* VCDR art. 31, but as the Second Circuit in *Brzak* explained, employment discrimination claims under Title VII "involve personnel management decisions falling within the ambit of [the Secretary-General's] professional responsibilities." 597 F.3d at 113. Other decisions have similarly held that employment discrimination lawsuits do not fall within the "commercial activity" exception to immunity. *See, e.g., Osman v. Annan*, No. 07-00837-CV-W-NKL, 2008 WL 2477535, at *2 (W.D. Mo. June 16, 2008) ("Courts have consistently found that . . . immunity applies to employment-related suits against officials of international organizations."); *Van Aggelen*, 2007 WL 1121744, at *2 (holding that plaintiff's

complaint, which alleged employment discrimination on account of the plaintiff's disability, did not fall within the "commercial activity" exception). Koumoin's employment discrimination claim therefore does not fall within this limited exception.

## IV.   Conclusion

For the foregoing reasons, the only defendant in this lawsuit, the current United Nations Secretary-General Ban Ki-moon, is absolutely immune from suit. Plaintiff Koumoin's claims are therefore dismissed under Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction. Plaintiffs' other motions are denied as moot.

This resolves Docket Numbers 6 through 10. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: December ___, 2016
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

13